IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 25-CR-305 |
| | : | |
| DONTE HUNTER, CORNELIUS STALLWORTH, GEORGE PINKNEY, KHALIL SAEED, & DONTAY TABBS | : | |

# OPINION

This opinion addresses the second issue in Defendant Donte Hunter's Omnibus Motions *in Limine* (Dkt. No. 261) ("D. Hunter's Motion"), which relates to the admission of Clarence Tabbs's statements to the confidential human source concerning the murder of R.J., *id.* at 6–13, as well as Defendant Cornelius Stallworth's Motion *in Limine* to Preclude Statement of Clarence Tabbs (Dkt. No. 263) ("Stallworth's Motion").[1] For the reasons that follow, Defendants' requests to exclude the statements are denied, subject to the Government establishing at trial the existence of the conspiracy and the membership in that conspiracy of both the declarant and the defendants against whom the statements are offered.

## I. Background

The statements at issue here were made during an in-person conversation on April 24, 2025, between Co-Defendant Clarence Tabbs and a confidential human

[1] Defendant George Pinkney filed a Motion *in Limine* to Join Co-Defendants' Motions *in Limine* & Preclude Statements of Co-Defendants as Hearsay (Dkt. No. 267). Similarly, Defendant Khalil Saeed filed a Motion *in Limine* to Preclude the Statements of Non-Testifying Co-Defendants and to Join Co-Defendants' Motions *in Limine* ("Saeed's Motion") (Dkt. No. 273). Those Motions are granted insofar as Pinkney and Saeed seek to join D. Hunter's and Stallworth's Motions, but denied insofar as they request preclusion of the statements in question.

source. *See* D. Hunter's Motion, Exhibit B (Recorded Conversation Between Co-Defendant Clarence Tabbs and Confidential Human Source) ("Recorded Conversation") (Dkt. No. 261-2). The conversation occurred the day after the confidential human source had "called [C.] Tabbs to complain that [C.] Tabbs had provided less cocaine than the [confidential human source] had paid for." D. Hunter's Motion at 3.

During the conversation, C. Tabbs apologized for the "miscommunication" and explained he ordinarily received his supply from his "old head[.]" Recorded Conversation at 2. On this occasion, however, C. Tabbs said he received his supply from his old head's brother, which resulted in an incorrect quantity. *Id.* ("That's why it came fucked up in the first place, the numbers."). C. Tabbs told the source that law enforcement raided his "old head['s] spot[.]" *Id.* at 3. He explained the increased attention from law enforcement was caused by a homicide committed in retaliation for the robbery of one of their drug houses, noting the homicide occurred within ten hours of the robbery. *Id.* at 3–7.

C. Tabbs recounted that several individuals were arrested and that the "murder weapon was still under the bed[.]" *Id.* at 3. He expressed dismay that the weapon was in the house and described the efforts made to dispose of the weapon. *Id.* ("[W]hy would he even bring it back then my old head broke that jawn down into five pieces and took them to different sewers around the city."). He further related details about the vehicle used in the homicide and commented on the "nine ounces they didn't

find right on top of the refrigerator[,]" *id.* at 4, 6, before concluding, "[t]hat's what's going on with us[.]" *Id.* at 7.

## II. Analysis

The arguments in D. Hunter's and Stallworth's Motions largely overlap, relying heavily on Federal Rule of Evidence 801(d)(2)(E). That Rule provides that a statement is "not hearsay" when it "is offered against an opposing party and ... was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To secure the admission of such statements, the proponent "must establish by a preponderance of the evidence that (1) the conspiracy existed; (2) both the defendant and the declarant were members of the conspiracy; and (3) the statement was made in the course of the conspiracy and in furtherance of the conspiracy." *United States v. Bobb*, 471 F.3d 491, 498 (3d Cir. 2006) (citation omitted).

Regarding the first two prongs (that a conspiracy existed and that the defendant and declarant were both members of that conspiracy), D. Hunter emphasizes that there are "concerns regarding the legitimacy of the Government's assertion that all codefendants were members of a single drug-trafficking conspiracy[,]" and argues that those concerns are "particularly acute" with respect to his involvement. D. Hunter's Motion at 8. However, as D. Hunter acknowledges, "the Third Circuit has consistently recognized [that in] cases involving complex conspiracies with 'large amounts of interrelated testimony,' the Government is permitted to admit the co-conspirators' statements subject to later proof of the

conspiracy." *Id.* at 7–8 (citing *United States v. De Peri*, 778 F.2d 963, 981 (3d Cir. 1985)).

Therefore, D. Hunter "concedes that attempting to have the Court determine, at this juncture, if a conspiracy exists … would not be the preferred practice in this Circuit." *Id.* at 9. He accordingly asks this Court to rule that any "introduction of statements pursuant to Rule 801(d)(2)(E)[] be done conditionally and that [D.] Hunter be permitted to seek to have the statements be stricken from the record if the Government cannot ultimately meet its burden to establish that a conspiracy existed and that Hunter was a member of that conspiracy." *Id.* The Court grants that request. Nothing in this Court's ruling should be construed as preventing Defendants from challenging any statements admitted under Rule 801(d)(2)(E) if the Government fails to establish by a preponderance of the evidence that the conspiracy existed and that both the declarant and the defendant against whom the statements are offered were members of that conspiracy.[2]

Turning to the third prong (that the statements were made in the course of the conspiracy and in furtherance of the conspiracy), D. Hunter submits that C. Tabbs "recounted the history of events to the [confidential human source] in a conversational and gossipy manner … interspersed with laughter." *Id.* at 11. D. Hunter characterizes the statements as merely "a narrative description of past

---

[2] The Court acknowledges that Saeed asks that the Government be required to establish the existence of the conspiracy and his participation in it "at a pretrial evidentiary hearing before any such statement is presented to the jury, or alternatively to proffer the statements and their bases in advance of trial." Saeed's Motion at ¶ 6. Nevertheless, that request is denied. Given the complexity of the alleged conspiracy and the interrelated nature of the anticipated trial testimony, the Court determines that the more appropriate course is to conditionally admit the statements subject to later proof of the conspiracy.

events, not information shown to have advanced the objectives of the alleged conspiracy." *Id.* at 13. He further insists that the statements, which involved "[t]elling a buyer that your stash house had been robbed, your supplier had fled the area, and that law enforcement was watching you, executing warrants on your supplier's residence, and arresting your friends and associates, would not serve to reassure" a customer. *Id.* at 11. According to D. Hunter, "[t]hose statements would have the opposite effect" and "would hinder, not *further*, the conspiracy." *Id.* (emphasis in original).

Stallworth advances similar arguments. He asserts that the Court should exclude "casual conversation between coconspirators, narratives of past events, and statements made to persons not involved in the conspiracy." Stallworth's Motion at 4 (citing *United States v. Gibbs*, 739 F.2d 838, 845 (3d Cir. 1984)). Stallworth stresses that he "had already been arrested at the time [C.] Tabbs made the statement and was no longer a participant of any conspiracy." *Id.*[3]

These arguments are not convincing. "The threshold for establishing that a statement was made in furtherance of a conspiracy is not high: the 'in furtherance' requirement is usually given a broad interpretation." *United States v. Duka*, 671 F.3d

---

[3] Stallworth cites no legal authority to support the contention that his arrest terminated his involvement in an ongoing conspiracy such that Rule 801(d)(2)(E) could no longer be satisfied. Indeed, the case law does not support Stallworth's contention. In *United States v. Ammar*, the defendants argued the charged conspiracy terminated with the arrests of several coconspirators, such that "any conversations thereafter fail to satisfy the final prerequisite for admitting coconspirator statements under Rule 801(d)(2)(E) because they were not made 'during the course' of the conspiracy." 714 F.2d 238, 253 (3d Cir. 1983). The Third Circuit, however, called this a "misconception" of the law. *Id.* The Court instead explained that "[t]he arrest of some of the conspirators, even its principal member, does not necessarily terminate the conspiracy. A conspiracy is presumed to continue until its objective is achieved." *Id.* (citation omitted).

329, 348 (3d Cir. 2011) (cleaned up). The Third Circuit has held that "[s]tatements between conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met." *Ammar*, 714 F.2d at 252 (citation omitted)[4]; *see also Bobb*, 471 F.3d at 498 (same). Statements serving those purposes are "more than 'mere narratives' of past events." *Ammar*, 714 F.2d at 252 (citation omitted).

Here, the statements were made in furtherance of the conspiracy. C. Tabbs was explaining to a customer why a previous order had been incorrect, relaying details of the disruption, reporting the remedial and retaliatory actions taken, describing the efforts to conceal those actions, and providing an update regarding the increased attention from law enforcement. This served to reassure a customer and maintain confidence in the organization's reliability and ability to procure drugs. Put differently, the statements "provide[d] reassurance, serve[d] to maintain trust and cohesiveness[,]" and kept a customer informed of "the current status of the conspiracy[.]" *See Ammar*, 714 F.2d at 252. Therefore, these statements fall within the broad interpretation given to the "in furtherance" requirement of Rule 801(d)(2)(E).[5]

---

4 While the language in *Ammar* describes statements "between conspirators," it is worth noting that both the language of Rule 801 and the standard articulated by the Third Circuit require only that the declarant and the party against whom the statement is offered be members of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E); *Bobb*, 471 F.3d at 498.

5 The following statement of C. Tabbs, however, may not be admitted: "Because I got a record. I got a crazy record so. Anybody with a record bro I'm pretty sure they identified already." *See*

Finally, Stallworth maintains that admission of the statement "would violate the Confrontation Clause of the Sixth Amendment to the United States Constitution." Stallworth's Motion at 5.[6] Stallworth asserts that "a defendant is deprived of his Sixth Amendment right to confrontation when a facially incriminating confession of a non-testifying co-defendant is introduced at their joint trial, even if the trial court instructs the jury to consider the confession only against the co-defendant." *Id.* (citing *Bruton v. United States*, 391 U.S. 123, 136 (1968)).

Stallworth's Confrontation Clause argument cannot succeed. The Confrontation Clause only applies to "testimonial" statements. *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (The Confrontation Clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'" (citation omitted)).

Of particular relevance here, the Supreme Court has identified "statements made unwittingly to a Government informant" as an example of evidence that would be "clearly nontestimonial." *Davis v. Washington*, 547 U.S. 813, 825 (2006) (citing *Bourjaily v. United States*, 483 U.S. 171, 181–84 (1987)). It has also noted that statements made in furtherance of a conspiracy are nontestimonial. *Crawford*, 541 U.S. at 56 ("Most of the hearsay exceptions covered statements that by their nature were *not testimonial*—for example, business records or *statements in furtherance of a conspiracy*." (emphases added)). Because C. Tabbs's statements were made

---

Recorded Conversation at 4. This reference to a prior record would be unfairly prejudicial and its inclusion does not add probative value to the Government's case. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice[.]").

6 "In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI.

unwittingly to a confidential human source and in furtherance of a conspiracy, they are nontestimonial. Therefore, admitting the statements would not violate the Confrontation Clause.

## III. Conclusion

For the reasons stated above, Defendants' requests to exclude C. Tabbs's statements are denied, subject to the Government's establishing the requisite foundation under Federal Rule of Evidence 801(d)(2)(E) at trial. An appropriate order follows.

DATED: November 24, 2026

BY THE COURT:

GAIL A. WEILHEIMER, J.